Appellant, Maurice McGinnis Mr. Scarborough for the appellant, Mr. Shurman for the appellee May it please the Court, Charles Scarborough for the Secretary of Agriculture. The Pigford Consent Decree makes decisions by an adjudicator under Track A or the arbitrator under Track B, final and binding on both claimants and the department, subject to only limited review by a monitor who may order reexamination on the finding of clear and manifest error. Although an adjudicator issued a final Track A decision in Mr. McGinnis' favor in 2008, awarding him $50,000 in various forms of debt relief, he now seeks to have that decision invalidated in order to pursue a potentially more lucrative claim under Track B. The district court granted plaintiffs' motion to enforce the Consent Decree and ordered the arbitrator to consider Mr. McGinnis' claims under Track B. That decision was wrong, in our view, for two reasons. First, the district court lacked the authority to invalidate an adjudicator's final decision because the Consent Decree makes such decisions final and binding on parties after any reexamination by the monitor is completed. He's not he didn't invalidate the adjudicator's decision. It absolutely did. Well, it might have had that effect, but that's not what he was reviewing. He was reviewing the decision of the facilitator, wasn't he? That is the analysis that the district court used to get around the finality provision here. In our view, and the district court agreed with this, he was invalidating a final decision. That's a necessary part of it. But it had the effect of that, right? Well, but that's an important effect, Your Honor. Counselor, let me ask you this way. Suppose there was no confusion as there was here as to which track the person asked for track B and for no good explanation it went to A and there was an adjudicated decision. And your argument would be that's final and the court can't correct it? Yes, Your Honor. That's nonsense because the Consent Decree upon which you're relying makes it clear that it talks about a violation. That would be a clear violation of the Consent Decree because it's not permissible to do that. A person can be put in the track that they did not ask to be put in and it's too bad as long as you can get it done fast enough so that you have a final adjudication and that's fine. That's completely nonsense. Well, Your Honor, I want to point out that what the parties bargained for under the Consent Decree, they put in a substantial procedural protection. That is review by a monitor. That is something that occurred in this very case. The monitor looked at this and then unfortunately there was an additional confusion in which the monitor... Additional confusion you call it? It was a complete screw-up by the monitor. Well, I'm not entirely... Again, it's not necessary for us to... The monitor allowed this to go a certain way and then they screwed it up. Right. So the individual didn't make a mistake nor did the attorney. The monitor made a mistake. Right. They violated the terms of the Consent Decree by declaring that this was a final adjudication when it was not final because it was not what the person asked for. There was a final decision by an arbitrator. Well, yes, I understand in the sense that that person who issued whatever they issued said, this is my final decision. That's not the question. It's a question of whether that has any effect. The arbitrator was directed by the court monitor to adjudicate the case under Track A. I understand. I'm accepting that premise. That's why I started with my hypothetical. If a person asks for B with no confusion and the system puts it in A and leaves it there and goes all the way through and there's a thing issued declared to be final, that person could be bound by that even though that's not what they ever asked for? Yes, Your Honor. It's just like any other error in the system. And, again, we're talking about any finality provision in an administrative system is going to lead to results that may in some respects appear to be unjust. No, no, no. The duties of the facilitator are to transmit to the arbitrator the claims factors of class members who elect to proceed under Track B. So if I don't elect to proceed under B or elect to proceed under A, you violated that if the facilitator sends it to the wrong place and then the monitor, the decision of the adjudicator should be final except as provided. Understood, Your Honor. But there can be a multiplicity, lots of different errors that can occur in the administrative process. And at some point the process is designed to have finality and not come to the district court for any sort of run-of-the-mill procedural or substantive error. There are lots of errors that can occur. But isn't the purpose of this finality provision, as best as I can tell, it seems like it has two purposes. One is so that if somebody elects Track A and then they, let's say they win and they get their $50,000, but they think, boy, I could have gotten more. I want to say, you know, Track B now. We don't want that. And then the other thing it seems to be designed is so that, you know, we want to move this process along. So once you submit your completed claims package, then the facilitator has to, you know, move it into Track A or B. And then things have to happen from that. And we don't want to kind of undo all of that. So, you know, we want this decision to be final. Aren't those really the purposes of this? Those are two primary purposes of it. What other purposes are there? Can I add an additional purpose? It's that we're already dealing with claims that occurred pretty far in the past, and then at some point there has to be finality because, you know, people die, witnesses go away. I mean, you just can't adjudicate these claims after a certain amount of time. Understood. But there's a 180-day limit to submit a claim after the consent decree was entered, right? That's correct, Your Honor. And he submitted his claim originally about 120 days in or less. It was like August the 6th. Yes, Your Honor. And then he sent a second letter in about three weeks later. So he's still within the 180 days. And the facilitator had not even done anything with his package to put it in Track A or B, right? So none of the purposes that we've agreed are served by this provision have been violated. If the facilitator were to say, okay, we got your letter, we're going to put you in Track B. I agree. She hadn't assigned it to a track. You know, no more witnesses have died because more time has passed. We haven't gotten, you know, a final decision on any kind of an adjudication that somebody is trying to get undone. So why couldn't you honor that decision, that election that's made in the letter? Well, I agree, Your Honor. I want to distinguish between sort of that point back in time when the facilitator could have made a change and put it into a different track per the person's request. We have a separate merits argument. And I want to make sure that it's clear that it's separate and independent from our authority argument that the decision to go into Track A once made is irrevocable. That's what the consent decree says under Paragraph 5D. He made this decision with counsel. Counsel signed the form along with him. Let's look at that consent decree. Sure. It's at J16, this 5D. And it says, at the time a claimant who asserts an ECOA claim submits his completed claim package, he must elect. Yes. So it uses the term completed claim package. Yes. Claim package is a defined term in the consent decree. Right. It's defined at JA10, Paragraph D there. And it says that a claim package will include a claim sheet and election form and the Track A adjudication claim affidavit and associated documentation and instructions. So just submitting this claim sheet and election form is not a claim package because there are other things that you have to submit. You have to submit a declaration, right? Showing, proving that you complained about discrimination in the past. I think that what he submitted, and, again, that is at JA. It begins at. It's at J39. J. It begins at J37. J37. And the place where he scratches out Track A or Track B arbitration and puts in Track A adjudication, then he fills out the Track A adjudication claim affidavit, making perfectly clear that he wants to go under Track A. Okay. But my question is this. Doesn't he also have to submit a declaration proving that he complained of discrimination during that relevant time period? I believe that what you're referring to, Your Honor, is the thing that is reproduced at JA39, the Track A adjudication claim affidavit. That's what is. In other words, his claim was clearly complete. It was treated as complete for purposes of Track A. There was no additional submission of information. If you look at JA15, it says a claimant must complete the claim sheet and return it in any supporting documentation to the facilitator. The claimant must also provide to the facilitator evidence in the form described below that he filed discrimination complaint between January 1, 81 and July 7, 97. And the evidence sufficient to proceed under Track A is what is attached to his claim form. It's a claim affidavit. I don't want to get too bogged down. No, I want to get bogged down. Okay, all right. Because that's what the consent decree says, and we have to interpret it. It says that you must also provide this evidence that he filed a discrimination complaint. Right. Show me on the pages that begin at JA37 where that documentation is, or isn't that a separate declaration? I don't believe so, Your Honor. I'm answering it as best I can. I believe that the evidence under Track A, keep in mind, Track A is a very lenient standard, a substantial evidence standard, and it is minimal evidence that is required. And essentially the affidavit there is, again, it begins at JA39, which is attached. Look at JA37. I am. It's at the bottom. At Part 2, you have to check all of the different boxes that show that you are a member of the class.  You must attach to this claim sheet documentation, proof for each item you check. And part of that proof is, did you file a complaint of discrimination against USDA? That's correct. And that can't be just on your word. You have to file a copy of a complaint that you filed or a declaration from somebody who's not a family member that says that you complained about discrimination or a copy of correspondence. But, Your Honor, again, part of the Track A situation is that often claimants don't have this information. They don't have any documents to provide, and so it is sufficient to submit just what is submitted here. In other words, and this was treated, the proof is in the pudding. It was treated as a final and complete Track A. But my point to you, Counsel, is in defining what a claim package is and looking at the provision that you're relying on. 5D. 5D, that's at J16. Right. It doesn't say that at the time a claimant who asserts an ECOA claim submits his claim form or that whatever the claimant puts on the claim form is final and irrevocable. It says at the time that he submits this completed claim package. So you could submit this claim form on September 1, and you could submit a declaration on September 7. That's from your pastor that says, yeah, he complained about discrimination, and these are the details, right? The fact that you could submit additional information to support what is already a completed Track A claim, I don't think makes it incomplete, in other words, Your Honor. I think, I mean, the process is designed to allow evidence to come in, you know, additional evidence, whenever people can get their hands on it. It was designed to be claimant-friendly. But if the consent decree says that for you to have a completed claim package, you have to have this form and proof by a declaration or other documentation that you complained about discrimination to be complete, doesn't the consent decree contemplate, it doesn't say you have to submit all of those things simultaneously, so doesn't the consent decree contemplate that you could send in your declaration on September 1 and then your claim election form on September 10? Is that precluded from the consent decree? I'm trying to give you the best answer I can. My understanding is that the adjudication claim affidavit that is at J.A. 39 and 40 is the necessary extra stuff under Paragraph 5D of the consent decree. It is his iteration of, I was discriminated, I farmed at this relevant period, I suffered discrimination. And that's sufficient to make it claimant-friendly. That can't be because that doesn't have anything to do with proving this fact that he complained about discrimination during the relevant time period. With respect, Your Honor, I think it does. At the bottom of J.A. 39, that's his description of how he suffered discrimination,  but it doesn't say that he complained of it during that time period. This consent decree says that the claimant must submit proof that he complained of discrimination during this time period. There's nothing on this form that addresses that issue at all. Is there? If there is, show it to me. I'm looking. I think what I would look at is J.A. 38. This is the same page that has his signature electing Track A, adjudication, and Track B, arbitration. The box that's checked is 3D, and I'll just read it. He's checking this to say this is the way he's going to go about proving his claim. A declaration executed pursuant to statute by a person who is not a member of the claimant's family, which states that the person has firsthand knowledge that while attending a USDA listening session or other meeting with the USDA official or officials, the claimant was explicitly told by a USDA official that the official would investigate that specific claimant's oral complaint of discrimination. In other words, that's his allegation that he complained at the time and then there's further information. But the declaration is not here. We don't have the declaration in the record, right? The declaration is a separate document. Again, Your Honor, the best I can say is that everyone in the administrative process understood the documents that you have before you on these four pages of the J.A. to be a completed claim, a Track A process. The dispute here is whether, in fact, it should have moved to Track B. How do we know that? Because they treated it as a final Track A, a completed Track A package. They processed it under Track A. He was originally denied it early on. It went for monitor review, and the monitor reversed that denial. It came back to the adjudicator, and the adjudicator granted a favorable decision on this still completed decision. So we know twice it was treated as a completed Track A. But we have to construe a consent decree, and it's a consent decree that does not say that your completed claim package is your claim election form. It says that your completed claim package is your claim election form, plus this declaration, plus any supporting documentation. Why isn't it a reasonable reading of this consent decree to say that you can supplement, with supporting documentation, your claim election form? So if you send it in on Monday, you can complete your claim package by sending in more stuff on Tuesday. Can I respond? I think you formulated it in two different ways. I think you could supplement with any additional information that you had at any time. The process was allowed to enable that. However, I don't think that the fact that you could supplement prevents this from being complete as it was filed, and the adjudicator, the monitor, and the adjudicator, again, all treated it as a complete. Well, then why does the monitor allow the move to Track B? Why wouldn't he? Why did he? The monitor understood when he was reviewing it, understood that plaintiff's counsel, and maybe misunderstood that plaintiff's counsel wanted to keep in under the current track. That's the interpretation he got from the facilitator. There's a footnote in the monitor's decision, footnote 125. Why would the monitor even raise that as a possibility, unless it was a possibility? Because in the petition for monitor review, that was raised as a possibility, for sure. There's no question he tried to raise that as one of the bases. He said, you were wrong under Track A, and, oh, by the way, I wanted to switch to Track B. The monitor tried to pursue that issue, got information from the facilitator, and arguably misunderstood that information and kept it as Track A, and it went back to an adjudicator who issued a final decision. That is a procedural error. There's lots of errors that can occur in an administrative process. Suppose he sent in the claim form and he doesn't check anything for A or B, leaves it blank, and then submits a letter a week later and says, okay, here's some additional documentation, here's this declaration from my non-family member, and, yes, I left my form blank. That's because I was still thinking about it. I'm choosing Track B. And he does all of that, and it's within the 180-day period. Can the facilitator just say, oh, you didn't put anything on your claim form, so you didn't submit a completed claim package. I'm not putting it in either track. This isn't complete. I'm going to pitch it in the circular file waste bin. I think he would, again, you're within the timeframe to submit a claim. I think that's not the way a facilitator should be acting. That would violate the consent decree? I just don't think it would happen, Your Honor. That's not my question. None of this happened. It's a hypothetical. I understand. So answer the question. Does that violate the consent decree? To pitch it in the trash, I think to deny it at that point, he's still within the timeframe, yeah, I think that would violate the consent decree. I have a couple of questions, all flowing from being confused by some of your answers. I want to go back to Judge Edwards' very first hypothetical to you. So if a person files a complaint under B, totally clear, I want to do B. The facilitator sends it to A. That can be corrected by the monitor, correct? Yes, Your Honor. All these things can be corrected by the monitor. Suppose the monitor fails to correct it. That can be reviewed by the court, right, under Paragraph 13 of the decree? Under Paragraph 13, provided there is not a final decision. That's not what it says. If the monitor, if the monitor, okay, so in my case, you clearly have a clear and manifest error, right? I'm looking at the language of 12B3. You have a clear and manifest error. Right, which gives the monitor the power to correct it. Which gives the monitor, and the monitor can correct a screening decision by the facilitator, right? And as a result, it manifests miscarriage of justice, right? And the monitor doesn't think that happened. Right, so in other words, the monitor could be wrong. Now, that can't be reviewed by the judge under Paragraph 13? No. Well, again, it depends on whether it is embodied in a final decision. This says nothing about a final decision. There are separate provisions. This is a decision. Excuse me. I'm asking you about the monitor's decision. The monitor has decided that someone who filed clearly under B but got processed under A is not an error that causes a manifest injustice. That's what the monitor decided. Now, why isn't that a, quote, a violation of, quote, any provision of this decree under 13? Of course it is. Your Honor, if the party were to object and invoke the procedures under Paragraph 13 to enforce, I think they could go to court. However, can I just add on one additional thing? The consent decree has to be construed as a whole, and that while there is the ability to correct sort of while the process is ongoing through the Paragraph 13, and the parties are supposed to work together, the Paragraph 13 makes that very clear. That's going to be my third question when we get to this, okay? Okay. Go ahead. Well, but the parties are supposed to work together, so presumably some sort of, you know, just check the wrong box and the monitor just did something crazy, USDA would consent to a switch. I don't know. I can't say. I'm not asking you that kind of question. That's not a helpful answer. I don't see how under this decree you can come up with any view of this other than that the district court can correct that as a violation of provision, even if there was a, which one does A, not the arbitrator, the adjudicator. Yes. So your point is that if the screen, under my hypothetical, if the facilitator sends it to the adjudicator and the adjudicator awards nothing, right? That's right. And the monitor later says, well, it should have been under B because that's what he asked for. Right. But concludes it's not a manifest injustice. The district court can't correct that because the adjudicator already rejected it. That's your view? There would be a final decision by the adjudicator. That's your view? Yes, Your Honor. Again, it's because the consent decree has to, well, can I give you why we think that's the case? Yeah, sure. And it's because while paragraph 13 gives authority to the district court to correct errors in the process while it's going on, there is also a finality provision. It is as broad as could possibly be. I'm focused on the separate finality provision in paragraph 9. You're ignoring the breadth of 13 and the alleged violation of any provision of the consent decree. It has to be construed in context with respect to paragraph 9, Your Honor, which gives finality. Once it goes to the final. The only thing none of us can comprehend is the mere fact that an adjudicator or an auditor has said something and you think that's it. Okay. Let me go on to my next question. Okay. Even under your theory that, and it does, it says the initial decision is final. It looks to me like this is not a hard case because, right, would you, do you have the district court's decision in front of you there? I can get it. Would you please? I'm looking at Joint Appendix 97 footnote. There's a footnote. Yes, Your Honor. Okay. So he says, the district court says, so he unambiguously chose A, but claim form suggests that he may have originally chosen B, originally chosen B. Okay? Got that? Yes. All right. Then you get to the final, to the district court's, now I'm on page 110, where the district court states his conclusion and he says the original mistake, there was a violation of the consent decree which required the facilitator to transmit to the arbitrator the claims under B. So the way the district court viewed this, looking at these two sentences together, is that what McGinnis originally wanted was B, but he screwed up, and it's that decision that's irrevocable and it should have gone to the arbitrator. Under your theory, that's, so the district court corrected that. The monitor failed to correct it. The district court did. Assume now, maybe your answer is, well, that doesn't work because the adjudicator rejected his plan. But assume for a moment, I know you'll like to hear this, that none of us agree that that's a basis for limiting the jurisdiction of the court under Paragraph 13. Okay? Okay. I'm not trying to limit this. It's a separate provision in Paragraph 9A. You are. Yeah, you're saying you have to, he's saying he's in limitation. You're saying he can't correct a, quote, violation of this decree if there's been a final decision by the adjudicator. Yes, Your Honor. Of course that's what you're saying. So what's the matter with my interpretation? Assume you're wrong about that. Okay. This is a hypothetical. Okay. Let's assume we don't agree with that. And that is that the district court can correct any monitor error. If the monitor thought it wasn't a manifest injustice, the district court could correct it. Okay? Under the consent decree, why isn't that the case we have here? The district court concludes here that his original intent was B. That's what he's saying. I understand. But what he says before that is, quote, Mr. McGinnis unambiguously selected track A. Read the rest of it. I understand. Read the rest of it. You've already read the good part from the claimant's side. But he may have chosen B. But the claim form suggests that he may have initially selected track B. He chose B. So the district court, instead of relying upon what's on the form that is signed by the claimant and his counsel, especially when the form is crossed out and is, you know, and then submits the information to proceed under track A. Well, then try to explain what the district court says on 110, that the error here was not submitting it to B, because that's what his original choice was. We think that was wrong, Your Honor. Because, again, it's wrong. But our job here, we have a decision of a federal district judge. Understood. We've got language that seems you could read this language as inconsistent, but you could also read it as consistent. And why would a judge say the error here was not honoring his original choice of sending it to B, if that isn't what he meant in that footnote? Well, what the judge – His original choice may have been B. What Judge Friedman said in that footnote is, yes, the form suggests that he may have initially selected track B before changing his mind. So the election, as it stands, in the district court's own words, is that he – and the district court says this, unambiguously selected track A. Yeah. You're only reading part of the sentence. No, I'm reading this. Let me go on to my last question, because I don't think we're getting anywhere here. So tell me about – I'm curious about this. The facilitator, the monitor, the arbitrator, and the adjudicator, are these all government employees? Who are they? They're different people. They're selected by the parties, usually by the district court, from a pool given by the parties. In other words, it's sort of both parties sort of assign off on a pool of people, and then the district court selects people. There's one arbitrator, one monitor. And do they get paid for their work? Yes, Your Honor. And does anybody sort of monitor how they're doing? I believe that the focus in the sort of the monitoring of the monitor, if you will, is on fraud prevention primarily. Well, what about competence? I mean, when I look at this – let me tell you candidly what I see when I look at this record. What I see when I look at this record is like almost gross incompetence here. So McGinnis makes a mistake on his form, but he does make it clear in the letter he wants B. Then all of these so-called neutrals completely mess up. The facilitator sends it to A instead of B. Doesn't say to him, by the way, you picked A, that's where it has to go. Just sends it to A. Let me just finish my – and you tell me what's wrong with this. Then he explains to the monitor that he really does want B, but if he can't have it, A would be okay. And so what does the monitor do? First of all, nothing for seven years. What's going on during those seven years? Are these people that busy? There is an enormous volume of claims. Seven years? I could read this in ten minutes and decide. You could give me hundreds of these a day, and I can tell you where they go. This is your brain surgery. Well, Your Honor, actually – Let me just finish my – so they wait seven years, right? Okay. Then she's got a – she or he, I don't know what it is. She is, her, whatever she is. So she's got this clear letter from him that says, I want B, but if that's not possible, I want A. So instead of just sending it to B – I'm sorry, can I clarify? The letter is the petition for monitor? Yeah. Okay. The petition. Instead of that, calls up the lawyer, right, and gets a – So the monitor calls the facilitator who deals with the parties. Yeah, and they call the lawyer, which is completely unnecessary because his petition says what he wants. And notwithstanding that this petition is clear, what does the monitor do? Sends it to Track A again, right? And at no time in this entire process did anybody say to Mr. McGinnis, you know, your problem, Mr. McGinnis, is your original choice was A, and you're stuck with that. And, in fact, even the arbitrator, when we get to the end of this thing, says, I can't do anything but go to court. So he goes to court, and the government comes in and says, for the first time, ah, all of these people were wrong. The facilitator was wrong. The monitor was wrong. The arbitrator was wrong. The adjudicator was wrong. The problem, Mr. McGinnis, is that you didn't – is that your first election was A. This is – this is unbelievable. I just – I have to say, we see a lot of administrative cases here. We see a lot of bureaucratic chaos and incompetence, but this is the worst I've seen. So. Okay. So does the government – was the government aware of Mr. McGinnis's, I think it's September 1st, letter where he says, I really want Track B? It was in the USDA's files. It was produced in this case. And the government is not trying to hide any awareness of that. My response overall, Judge Tatel, is that, yes, this is an enormous volume of claims coming through a process. When you look at any individual case and you have finality provisions, there can be errors that may appear to be gross. The parties bargained for a finality provision that, at the end of the day, says, look, we have a check in place here with a monitor. You get to go to a monitor, you get one shot with a monitor to correct bad adjudications by adjudicators or arbitrators. The monitor – Excuse me. That's not what 12B3 says. It says a monitor can review a screening decision. I'm sorry. It says a screening decision. I think the monitor is reviewing decisions by adjudicators and arbitrators. It says – What page is it? It says where the monitor determines an error has occurred screening adjudication or arbitration. That's an error in the – in other words, in the final decision. That's an error in the consent decree? No, no, no, no, no, no. The 12B3, JA28, means that the monitor gets to review what's gone on with adjudicators. When adjudicators made a decision and the claimant is unsatisfied, you get to go to a monitor. You get to say – Excuse me. What screening decisions do arbitrators and adjudicators make? Again, it's – They don't make screening decisions. Judge Cato, can I read that sentence to you? Yeah. Because it's in the disjunctive. The monitor – this is Shell, and then there's sub-Roman 3. Direct the facilitator, adjudicator, or arbitrator to reexamine a claim where the monitor determines that a clear and manifest error has occurred in the screening, adjudication, or arbitration of the claim and has resulted or is likely to result in a fundamental miscarriage of justice. Yeah, thank you. That's exactly what I think it means. That's my point. The reference – It was his screening. The reference back to screening. The parallel provision's here. Facilitator screening. We're not – Adjudicator is adjudication. Okay, then maybe – Arbitrator is arbitration. Then maybe I'm – Correct an error in screening done by the facilitator. Yes, absolutely. We're not saying – then this is a huge – I just understood what's going on here. We're not saying that the monitor could not have corrected this thing. In other words, if it had been clear that he wanted to go to Track B, we're never saying that the monitor could not have corrected it. That's not true. You've told us that if the arbitrator has already made a decision, the monitor can't fix it. No, that's not – That's what you've been telling us. No. Stop. Stop. I'm sorry. I said it myself. If we had a stenographer here – No, no, no. It's okay. If we had a stenographer here, I'd have him read it back to you. You told each of us that if the arbitrator, the adjudicator, has rejected the claim on the merits, the monitor can't do anything. Now, are you changing that position? No. What I tried to say and what I hope I said is that when a decision is final, in other words, when the period for monitor review has expired – I think we've heard enough of this. Okay, let's go on here from the other side, and I'll give you two minutes to respond. Okay. Come on. Good morning, Your Honor. May it please the Court, my name is John Shawman. I'm appearing here on behalf of Maurice McGinnis. Please don't tell me to stop in the middle of your argument. Yes, Your Honor. Thank you. Mr. McGinnis, my client, has believed since September 1999, more than a decade ago, that he was entitled to more than the $50,000 cap established in Track A. He believes that he can prove, and all he's asking for is a one – they call it a one-day mini-trial before an arbitrator – that he actually suffered hundreds of thousands of dollars of damages because of the past discrimination of the USDA. He correct – there's no question that his initial election form is a mess. But as Judge Wilkins correctly pointed out, it's not complete when it was sent in. There were no documentation. He corrected it in September of 1999, well within the 180-day period, to say to the facilitator, please put me in Track B. I have the losses to substantiate. Recognizing then, as he does now, that if he doesn't substantiate those losses by a higher burden of proof than is required in the Track A adjudication phase, that he gets nothing. He's turned down the $50,000 check. He's willing to stand by the merits of his claim. Let me ask a record question here, because the only thing that I saw in the appendix was the letter. I didn't see any additional documentation. I don't see this declaration that's supposed to be filled out that proves that you made a complaint for discrimination. Is any of that in the record, either in the trial court, and it just wasn't put in the appendix, or did I miss it in the appendix? Not to my knowledge, Your Honor. He did not, the claims form he filed, it says Track A says Track B. It doesn't have the documentation that would be required if it was to be considered under Track A. The reason the Track A, the initial Track A adjudication was denied was because it didn't have the documentation that a Track A adjudication required. That's so clearly, and when a petition for monitor review was filed, his counsel at that time said he wanted Track B. That's why the information, the documentation for a Track A adjudication, which is not really hearing at all, is not there because he wants to present this in the one-day arbitration. That is conclusive that my client has always maintained he had a Track B claim. There's no doubt in my client's mind what he had. So there was a mistake by the facilitator back in 1999. That mistake, the length of time is almost mind-boggling. We go seven years later, and the facilitator, the issue is now before the monitor, and the issue before the monitor was, is he entitled to a Track B arbitration? That was an issue before the monitor. There's no question about that. The facilitator then calls class counsel, Mr. Franz, and says, does Mr. McGuinness still want Track B? Well, Mr. Franz consulted with Mr. McGuinness and wrote an email, a very informal, terse email, back to the facilitator saying the PMR, the petition for monitor review, stands as is. In his mind, Mr. Franz, I assume, and certainly for my client, he was saying, we are going forward with the request for an arbitration under Track B because there was a mistake in the screening in 1999. The facilitator, in some misguided or miscommunication to the monitor, said, Mr. McGuinness has dropped any claim to a Track B. So then we get this few more years pass by, and we get this lengthy ruling from the monitor because my client's counsel at that time did submit the documentation for a Track A, arguing in the alternative, if he's not going to get Track B, he would like the $50,000. But in my client's mind, he never gave up on the Track B. Finally, when it was sent back for adjudication, he did not take the $50,000 check. He did not cash the $50,000 check. He is utterly convinced he can meet the higher burden of proof in a one-day arbitration and recover the damages to which he's justly entitled. The government's position that the finality of the second adjudication cannot be disturbed in any manner whatsoever actually contradicts its own position. As the district court pointed out, the USDA has successfully moved the district court to vacate adjudications on the grounds of fraud. Well, this one's a mistake. That adjudication is not being so much vacated as being declared a nullity. It never should have happened in the first place. In terms of the enforcement powers of the district court under Paragraph 13, I think the district court's opinion is very clear. It's not a review of the overall purposes of the consensury for the court to find that the paragraph 13 permits the enforcement of any provision of the consent decree. Any provision of the consent decree includes the duties of the facilitator to correctly assign the case. So it was reviewable under Paragraph 13. The district court itself, because we had no discovery, we had no access to this information, the district court itself ordered, basically shone a light on where the second miscommunication occurred here and could see that this was simply a mistake, a mistake because of, I don't know, overwhelmed with work, incompetence, but for whatever reason there was a mistake and my client is now being asked to bear the burden of that mistake, whereas it's a very simple solution here, a one-day mini-trial, and that's all he's asking. If the panel has no questions, I'll go. Thank you, Your Honor. Mr. Scarborough, you can have two minutes if you'd like. I'd just like to try again by focusing on the systemic issues here. The parties bargained for a consent decree in which there were substantial procedural protections built in. A monitor review is the primary thing the parties bargained for. And at the end of the day, included a finality provision that is about as broad as you can imagine, a 9AV that forever waives the right to come into court. We're at the tail end of the Pickford process here, so maybe this isn't going to be a flood of claimants coming in, but you're talking about thousands, 20,000 people under the process here, and there's all kinds of errors that can be alleged in the process. In the Roballa case, which this Court summarily affirmed, the allegation was that the arbitrator under Track B was unconstitutionally discriminatory, discriminated against the claimants there. There are all kinds of claims of error that can be raised. And the point is that the finality provision at some point says enough is enough. Okay. Let's just make sure we're all on the same wavelength about the effect of that. Okay. So going back to Judge Edwards' original hypo, if someone files a Track B complaint, it's totally clear. Checks B, fills out all the proper forms. Facilitator sends it to A. The adjudicator rejects it. Okay? Right. Then there can be monitor review. Okay. There can be a monitor review. Yes. Right. That would be pretty clear and manifest error. Let's assume the monitor says that there was no manifest injustice. Okay. That's a huge leap, but okay. Well, let's just assume that that happens. Okay. I'm just – Is it the government's position that that decision cannot be reviewed under paragraph 13? The monitor's decision before – at that point, there is no finality. There is no final adjudicator decision. Yeah, there is. Adjudicator rejected. That's not hypothetical. But it's not final because it's still subject to – that's my point. Is it still subject to review under the monitor? So that decision has not become final, if that makes any sense. I hope that it does. Could you just indulge us? It's a simple hypothetical, and you're getting angry with us because you won't answer our hypothetical. I'm trying to, Your Honor. It's all done. No, it's – The arbitrator or adjudicator has delivered a decision. The monitor says, I will not overturn it. Okay. All we're asking you is do you think that they can go to court or not? No, not at that point. That's what we thought. That's right. Then we have a question. Okay. But the reason for that, Your Honor – and again, if you focus on any one case – Wait a minute. Wait a minute. I want to – so I don't understand what you just said. So the arbitrate – the adjudicator's rejection of it is not final because it's pending before the monitor? That's correct. As long as there's something pending before the monitor, it's not a final decision by definition. If the monitor rules that it's not a violation, a manifest injustice, then it can go to the court, right? No, he said no. Okay. So once the monitor rules – I see. So your point is that the monitor's rejection – There's an arbitrary decision that's been confirmed. Okay. So once the monitor rejects it, that's final. That renders the decision final. So we write that in an opinion. That would be an accurate reflection of the government's view of this consent decree. Your Honor, and again – Is that right? Yes, Your Honor, because the adjudicator's decision has become final by the monitor rejecting the claimant's appeal. But in this case, the monitor didn't do that. And the way you get there, so I understand it, is that even though the plain language of 12b-3 doesn't support that, doesn't say anything about finality, you say we have to read 12b-3 in connection with the finality provision. Yes. Right? I think we understand. Thank you. The case is submitted.
judges: Tatel, Wilkins, Edwards